UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST. PAUL FIRE AND MARINE INSURANCE
COMPANY,

                         Plaintiff,

          -against-

MATRIX POSH, LLC,

                       Defendant.
------------------------------------------------------------X

**ORDER**
10-CV-4776 (SJF)(WDW)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   APR 3 0 2012   ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On October 19, 2010, plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul" or "plaintiff") brought this action seeking a declaratory judgment that it is not liable to defendant Matrix Posh, LLC ("Matrix Posh" or "defendant") pursuant to a marine insurance agreement between the parties. Docket Entry Nos. 1, 4. By order dated November 22, 2011, the Court denied St. Paul's motion for summary judgment, finding that there were triable issues of fact concerning defendant's alleged misrepresentations and nondisclosures. Docket Entry No. 44.

Since the Court issued that order, the parties have conducted discovery, and St. Paul has filed a renewed motion for summary judgment. Docket Entry No. 68. Now, for the reasons that follow, plaintiff's motion for summary judgment is granted.

I.     Factual Background

The facts underlying this case are discussed in the Court's November 22, 2011 order. See

1

Docket Entry No. 44 at 1-4. Briefly, Matrix Posh is the owner of a sixty-five (65) foot motor yacht named the "M/Y Matrix Rose." Docket Entry No. 29 at ¶ 2. On or about May 17, 2010, St. Paul issued a marine insurance policy to defendant, which provided for $800,000 of coverage for physical damage to the M/Y Matrix Rose (the "Policy"). The Policy was effective from May 6, 2010 to May 6, 2011. Id. at ¶¶ 30-31; see also Plaintiff's Exhibit 9, Docket Entry No. 70-9 at 5.

On September 19, 2010, the M/Y Matrix Rose struck an unidentified, submerged object in the Long Island Sound. Docket Entry No. 29 at ¶ 2. At the time of the allision, the yacht was being operated by Glen Nelson, a managing member of Matrix Posh. Id. at ¶ 3. Neither the yacht's captain, Alan Ross, nor the other member of its crew, Betty Ross, were aboard the M/Y Matrix Rose at the time of the accident. Id. at ¶¶ 9, 15. In September 2010, Matrix Posh sought coverage from St. Paul for physical damage related to the allision and related salvage expenses. Id. at ¶ 2.

Plaintiff now seeks to void the Policy based upon alleged misrepresentations and nondisclosures by Matrix Posh in connection with its application for insurance coverage. Specifically, St. Paul argues that: (1) defendant failed to disclose damage sustained by the M/Y Matrix Rose when an unmoored sailboat drifted into it in Port Jefferson, New York in October 2008; (2) defendant failed to disclose an injury Alan Ross suffered while aboard the M/Y Matrix Rose; (3) defendant "misrepresented" that it employed a mate on a "full time" basis; (4) defendant "misrepresented that it employed a full time captain" and failed to disclose that the M/Y Matrix Rose would be operated by Glen Nelson; and (5) defendant breached the Captain Warranty within the Policy. Plaintiff's Memorandum of Law ("Pl. Mem."), Docket Entry No.

69, at 7-20.

II. Discussion

   A. Summary Judgment Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

"A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule

3

56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

B. Analysis

First, St. Paul argues that defendant's failure to disclose prior damage to the M/Y Matrix Rose renders the Policy void ab initio. In light of the additional evidence and new information presented in the renewed motion for summary judgment, the Court agrees.

1. The Doctrine of Uberrimae Fidei

It is settled that "[t]he parties to a marine insurance policy must accord each other the highest degree of good faith." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 13 (2d Cir. 1986). This doctrine, known as uberrimae fidei, "dates back centuries" and is a "rule peculiar to marine insurance law." Federal Ins. Co. v. PGG Realty, LLC, No. 06 Civ. 2455, 2007 WL 1149245, at *4 (S.D.N.Y. Apr. 17, 2007). In this context, an insured has the duty to "disclose any information that materially affects the risk of being insured," even if the insurer does not specifically request it. New York Marine & Gen. Ins. Co. v. Tradeline, 266 F.3d 112, 123 (2d Cir. 2001). "[I]f the insured fails to disclose a material fact that the insurer relied upon in approving coverage, then the policy is void, regardless of whether the misrepresentation or

4

omission was intentional or was the result of accident or mistake." Fed. Ins. Co. v. PGG Realty, LLC, 538 F.Supp.2d 680, 688 (S.D.N.Y. 2008) (internal citation omitted).[1]

2. The Policy is Void Ab Initio

In its original motion for summary judgment, St. Paul argued that the Policy was void ab initio because Matrix Posh had failed to disclose a 2008 incident in which an unmoored sailboat had drifted into the M/Y Matrix Rose. At that time, St. Paul did not proffer evidence of the nature or extent of the damage, and an affidavit of the ship's captain described the damage as merely "cosmetic." As a result, the Court found that St. Paul had not met its burden of demonstrating the damage was "material." Docket Entry No. 44 at 12 (citing Puritan Ins. Co. v. Eagle S.S. Co. S.A., 779 F.2d 866 (2d Cir. 1985)).

In connection with its renewed motion, St. Paul submits deposition testimony and other exhibits demonstrating that this prior damage materially affected the risk of being insured. As a result of the collision on or about October 29, 2008, the M/Y Matrix Rose was driven into the dock, causing damage to its hull and allowing water to enter the boat's interior. Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pl. 56.1 Stat."), Docket Entry No. 70, at ¶¶ 26, 27, 29. Temporary "emergency" repairs on the boat were performed in New York, and Matrix Posh planned to have permanent repairs performed in Florida. Id. at ¶¶ 30-31. While the M/Y Matrix Rose was making its way to Florida, water began to enter the vessel again, and Captain Ross was

---

[1] This is a greater burden than under the "ordinary" insurance rule in New York, which states that "absent fraud, the insured's failure to disclose a fact about which it was not asked is not grounds for avoiding the policy." See In re Balfour MacLaine Intern. Ltd., 85 F.3d 68, 81 (2d Cir. 1996).

5

forced to stop in North Carolina for further "emergency" repairs. Id. at ¶¶ 32-33. Matrix Posh claimed over fifty-five thousand dollars ($55,000.00) for damage in connection with this collision, id. at ¶ 36, and it ultimately received a settlement of forty thousand five hundred dollars ($40,500.00), id. at ¶ 37.

Matrix Posh did not disclose this prior damage to St. Paul at any time during the insurance application process. In fact, in response to a request that it list its loss history, Matrix Posh responded as follows:

Insurance Losses:

Owner __0__ Details _____

Captain __0__ Details _____

Plaintiff's Exhibit 3, Docket Entry No. 70-3.

Given the 2008 collision, the foregoing response was inaccurate. Whether this misstatement was intentional or merely careless is irrelevant. "The duty of communication [of material facts], indeed, is independent of the intention, and is violated by the fact of concealment even where there is no design to deceive." Am. Home Assurance Co. v. Masters' Ships Mgmt. S.A., 423 F.Supp.2d 193, 223 (S.D.N.Y. 2006) (quoting Sun Mut. Ins. Co. v. Ocean Ins. Co., 107 U.S. 485, 510, 1 S.Ct. 582, 599, 27 L.Ed. 337, 345 (1882)); see also Thebes Shipping, Inc. v. Assicurazioni Ausonia SPA, 599 F. Supp. 405, 426 (S.D.N.Y. 1984) ("It is not necessary that plaintiffs prove . . . an intent to conceal . . . . This intent, in respect of marine insurance, is irrelevant.").

The next question is whether this nondisclosure qualifies as "material." "A non-disclosed fact is material if it would have affected the insurer's decision to insure at all or at a particular

premium." New York Marine, 266 F.3d at 123. "An objective standard of disclosure applies, 'that is, whether a reasonable person in the assured's position would know that the particular fact is material.'" Am. Home Assurance, 423 F.Supp.2d at 221 (quoting Knight, 804 F.2d at 13). "The burden of proof of a material nondisclosure or of a misrepresentation lies with the insurer." Royal Indem. Co. v. Deep Sea Intern., 619 F.Supp.2d 14, 25 (S.D.N.Y. 2007). "Although materiality is often a question of fact . . . summary judgment may nevertheless be appropriate in such cases . . . ." Albany Ins. Co. v. Horak, No. CV-92-2157, 1993 WL 269620, at *7 (E.D.N.Y. July 13, 1993).

A number of courts, including the Second Circuit, have noted that an insurance applicant's loss history is material to the insurer's decision to insure at all and to the assessment of the appropriate premium. Pinette v. Assurance Co. of Am., 52 F.3d 407, 411 (2d Cir. 1995) ("Common sense tells us that an applicant's prior loss history is material to a reasonable insurance company's decision whether to insure that applicant or determination of the premium.");[2] see also Certain Underwriters at Lloyd's v. Montford, 52 F.3d 219, 222 (9th Cir. 1995) ("An insurance applicant's loss history is a fact material to the risk."); New Hampshire Ins. Co. v. Diller, 678 F.Supp.2d 288, 306 (D.N.J. 2009) ("[A]n applicant's loss history is often material to an insurer's decision to issue a policy."); Great Lakes Reins. PLC v. Arbos, 2008 U.S. Dist. LEXIS 109472, at *15-16 (S.D. Fla. Dec. 30, 2008) ("[A] prospective insured's loss history is undoubtedly material, as it might have a bearing on the risk to be assumed by the insurer, and no reasonable juror could find otherwise . . . . [C]ourts have routinely found that an insurance

---

[2] Pinette did not involve a marine insurance contract, and the case implicated issues of Connecticut state insurance law. However, the Court believes that the reasoning underlying Pinette is useful in the instant analysis.

applicant's loss history is a fact material to the risk."); In re Payroll Exp. Corp., 216 B.R. 344, 357 (S.D.N.Y. 1997) ("Courts throughout the United States . . . affirm the basic notion that an applicant's prior loss history is necessarily relevant to the insurer's calculation of risk . . . .").

In an affidavit, Glen Nelson states that the damage was "minor," "cosmetic in nature," "involved no permanent or substantial damage to the ship," and did not "impair the seaworthiness of the vessel." Docket Entry No. 72 at 3. Even if true, these facts do not determine the materiality or immateriality of the nondisclosure. See Knight, 804 F.2d at 13 ("[T]he materiality of the nondisclosure does not depend on what an investigation would have revealed."). As the Supreme Court explained in Sun Mutual over a century ago: if "any circumstance is withheld, however slight and immaterial it may have seemed," that "concealment vitiates the policy" if disclosure "would probably have influenced the terms of the insurance." Sun Mutual, 107 U.S. at 510-11; see also Contractors Realty Co. v. Ins. Co. of N. Am., 469 F. Supp. 1287, 1294 (S.D.N.Y. 1979) ("The doctrine of [u]berrimae fidei obligates the assured to volunteer information which might have a bearing on the scope of the risk assumed . . . .").

Upon reviewing the evidence and discovery materials on file, the Court finds that defendant's failure to disclose its loss history was material as a matter of law. The damage from the 2008 sailboat collision resulted in a crack in the boat's hull and permitted water to enter the boat. The damage was sufficiently serious that Captain Ross deemed it necessary to stop for "emergency" repairs en route to Florida. Moreover, there is no dispute that the damage resulted in a loss amounting to tens of thousands of dollars and an insurance claim.

Furthermore, given that St. Paul specifically requested information about the vessel's loss history, a reasonable person in defendant's position would know that information about prior

8

losses was material. As the Second Circuit stated in <u>Kerr v. Union Marine Insurance Company</u>, 130 F. 415 (2d Cir. 1904): "If the misrepresentation is made in reply to a specific question, the question of materialness is excluded, on the ground that the insurers, by asking the question, imply that they think it material, and that it is their right to judge for themselves as to what is material to the bargain they are asked to make . . . ." <u>Kerr</u>, 130 F. at 417 (quoting 1 Parsons on Marine Insurance 413); <u>see also</u> <u>Christiana Gen. Ins. Corp. of New York v. Great American Ins. Co.</u>, 979 F.2d 268, 280 (2d Cir. 1992) ("Where the insurer specifically inquires as to a fact, the insured is thereby on notice that the insurer considers it material . . . .") (interpreting reinsurance contract).

This principle was applied by this court to a marine insurance contract in <u>Albany Insurance Company v. Horak</u>. Defendant purchased a yacht that had previously suffered damage to its underside, permitting water to enter the vessel. <u>Horak</u>, 1993 WL 269620, at *1. The previous owner received a payment of $94,884.90 from his marine insurer toward the claim. <u>Id.</u> After purchasing the yacht, defendant Horak applied for marine insurance. <u>Id.</u> at *3. In response to a question in the insurance application about "loss history," defendant wrote "None." <u>Id.</u> In other words, he did not disclose the previous accident or repairs to the yacht. The court found that defendant violated its "obligation to reveal [the loss history] to [the insurer]," and that "[a] reasonable person in [defendant's] position would know that these particular facts 'would have controlled the underwriter's decision' to accept the risk, as is made clear . . . by the fact that these issues were the target of direct questions on the application form." <u>Id.</u> at *8-9. The court declared the policy void <u>ab</u> <u>initio</u> "under the <u>uberrimae</u> <u>fidei</u> principle of marine insurance law." <u>Id.</u> at *9.

Ultimately, "the insurer should be afforded the opportunity to investigate prior to its acceptance of the risk . . . . [T]he assured is required to communicate the information to the insurer before the policy is issued, so that the insurer can decide for itself at that time whether to accept the risk." Knight, 804 F.2d at 13-14. In other words, it is the insured's duty to "place the underwriter in the same situation as himself." Sun Mutual, 107 U.S. at 510. In this case, defendant failed to fulfill that duty, and plaintiff has met its burden of demonstrating that defendant's nondisclosure was material. Since this first issue is dispositive, the Court need not reach plaintiff's remaining arguments.

III. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is granted. The maritime insurance policy at issue in this action, Policy of Insurance No. YP02902490, is void ab initio. Consequently, defendant is not entitled to recover from plaintiff for any portion of its claimed loss. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: April 30, 2012
Central Islip, New York